IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES C. ARNOLD, #306410   *
    Petitioner,
  v.       *  CIVIL ACTION NO. DKC-09-1854

GREG HERSHBERGER, WARDEN *
    Respondent.
         ***

## MEMORANDUM OPINION

Pending before the court are Petitioner's original and supplemental petitions for writ of habeas corpus, Respondent's Answers, and Petitioner's Reply.[1] Paper Nos. 1, 4, 7, 8, & 11. After review of these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(e)((2). For reasons that follow the Petition will be denied and dismissed with prejudice.

### Procedural History

According to the record, on April 19, 2001, Petitioner was arrested for theft and credit card offenses and charged with multiple counts involving the alleged misuse of credit cards in two separate criminal cases in Washington County, Maryland. In the case at issue here, he was originally charged in the District Court of Maryland for Washington County with twenty-one counts (seven counts of theft under $500.00, seven counts of theft under $500.00 by scheme, and seven counts of misrepresenting a credit card holder). Paper No. 4, Ex. 18 at pps. 1-2; Paper No. 7, Ex. 1. During the proceeding in the District Court, Petitioner was advised of his right to counsel and warned of the consequences of failing to obtain counsel. The Office of the Public Defender ("OPD") subsequently entered its appearance on Petitioner's behalf. Petitioner prayed a jury trial

---

[1] Subsequent to the filing of Respondent's Answer and his Reply, Petitioner filed a document claiming that four pages of his original Petition had not been filed. The filing, construed as a supplement to the original Petition, has been taken into consideration by the court. Paper No. 11.

and the case was transferred to the Circuit Court. Petitioner appeared with counsel before Circuit Court Judge Donald E. Beachley on September 13, 2001.[2] Paper No. 4, Ex. 2, Tr. at 1-2. The matter was continued until September 18, 2001. On that date, Petitioner appeared before Circuit Court Judge Fred C. Wright III and sought to terminate his representation from the OPD. *Id*., Ex. 3, Tr. at 3-4. Judge Wright entered into a discussion in which Petitioner first indicated his understanding of his actions in dismissing counsel and Judge Wright proceeded to discuss the nature of the charges and potential sentences. Paper No. 4, Ex. Tr. 5-9. Petitioner again voiced his understanding that in discharging the OPD "he was going to have to proceed without an attorney," if he did not "obtain counsel of [his] own" and that he was not "going to be given any special dispensation because [he did not] have counsel." Paper No. 4, Ex. 3, Tr. at 10. Trial was set in for October 18, 2001 and the OPD was officially discharged.

On October 18, 2001, Petitioner appeared *pro* se for a motions hearing before Judge Beachley. *Id*., Ex. 4. The proceeding covered Petitioner's *pro se* motions for continuance, consolidation, and to stay. Further, there was a discussion of the issuance of subpoenas, the scheduling of pretrial motions, discovery, witnesses, and Petitioner's right to counsel under the theory that a proper "waiver inquiry" was not conducted under Maryland Rule 4-215.[3] *Id* The continuance was granted and Judge Beachley indicated that he would contact the OPD to represent Petitioner.

---

[2] At the proceeding, defense counsel noted that the Public Defender's appearance had been stricken at Petitioner's request in *Maryland v. Arnold*, 21-K-01-28307, the other criminal case involving the illegal use of credit cards (three felony counts). Paper No. 4, Ex. 2, Tr. at 1-2.

[3] Petitioner also contended that he had not previously waived his right to counsel, but had instead "requested counsel outside of the Public Defender's Office." Paper No. 4, Ex. 4.

On November 15, 2001, a status hearing was held before Judge Beachley, who noted that counsel from the OPD had visited Petitioner at the local detention center and Petitioner had indicated to them that he did not want OPD services. Judge Beachley then proceeded to conduct a review of the matter under Maryland Rule 4-215(d) and served Petitioner with a copy of the rule. Paper No. 4, Ex. 5, Tr. at 1-3. On December 1, 2001, Petitioner appeared *pro* se before Judge Wright for a suppression hearing. *Id.,* Ex. 6. On January 24, 2002, a motions hearing was held before Judge Wright as to "dispose of all of the motions that are pending" in Petitioner's three criminal cases.[4] *Id.,* Ex. 7. Of import was Petitioner's motion to dismiss, founded on his claim that the OPD had denied him the effective assistance of counsel. *Id.,* Ex. 7, Tr. at 21. The motion was denied.

Petitioner's twenty-one count criminal case,[5] the subject of the instant habeas corpus Petition, came before Judge Beachley for a jury trial on February 19, 2002. *Id.,* Ex. 8. Petitioner proceeded *pro se.* The evidence presented by the state showed that a number of purchases had been made at stores and a hotel room was reserved in the Hagerstown, Maryland area using a fraudulent credit card account opened under the name of Thomas Weigman. Petitioner, who had checked into a hotel room under that account, was subject to a pat down and search and a Sears Mastercard credit card, under the aforementioned account name, was found in the pocket of his pants. In addition, credit card receipts under name of Thomas Weigman were entered into evidence as having been found in the duffel bag in Petitioner's hotel room, along with the items bought with that credit card.[6]

---

[4]     A third criminal case in the Circuit Court for Washington County, *State v. Arnold*, 21-K-01-29791, involved the charge of second degree assault on a correctional employee.

[5]     Petitioner was charged with theft, continuing scheme of theft conduct, and intent to defraud the Plaza Hotel, Camelot Music Store, K-Mart, Payless Shoe Store, Hecht's, and Radio Shack. Paper No. 4, Ex. 8.

[6]     The state also entered evidence showing that packages containing credit cards under the name

Further, witnesses who were employed at various stores identified Petitioner from photo arrays as the individual who purchased property using the "Weigman" credit card. In addition Thomas Weigman, a resident of Connecticut at the time, testified that he had never been to the Hagerstown area, the signatures on the credit card and the receipts were not his, he had never had any business relationship or contact with Petitioner, and he had never applied for a Sears Mastercard credit card.

At the conclusion of the state's case, Petitioner made a motion for acquittal, which Judge Beachley granted as to the seven counts of theft scheme. Paper No. 4, Ex. 8, Tr. at 112. As a defense Petitioner raised the issue of lack of criminal responsibility and entered into evidence documentation attempting to show that as he had worked for the Department of Treasury and the National Security Agency he was entitled to "official capital immunity." He further testified on cross-examination that he had worked "under cover" on a number of occasions as a government agent to expose fraud and civil rights violations.

On February 19, 2002, at the conclusion of the one-day trial, the jury deliberated for approximately 30 minutes and found Petitioner guilty of the remaining fourteen counts of misdemeanor theft and credit card fraud. *Id*., Ex. 8, Tr. at 158-161. Judge Beachley imposed seven consecutive 18-month sentences as to the theft counts, to be served consecutive to a sentence Petitioner was already serving, and did not impose sentences on the remaining seven credit card fraud counts under the rule of lenity. *Id*., Ex. 8, Tr. at 170-172. On March 5, 2004, Petitioner appeared *pro se* before Judge Beachley on his motion for new trial, which was denied. *Id*., Ex. 9.

On appeal, Petitioner raised the following questions for review:

1. Did Judge Wright err or abuse his discretion by not appointing counsel on September 18, 2001?

---

of Thomas Weigman were sent to two Hagerstown hotels where Petitioner was staying.

2.       Did Judge Beachley err or abuse his discretion by not determining if the Petitioner would waive counsel on October 18, 2001?

3.       Did Judge Beachley err or abuse his discretion in not appointing any attorney after the Petitioner made a specific request for counsel?

4.       Did the state and court err or abuse discretion in advising Petitioner that no authority existed to appoint counsel outside of the Office of the Public Defender?

5.       Was it reversible error to deny the motion to dismiss below based upon the denial of counsel, discovery, and improper joinder?

6.       Did Judge Wright abuse his discretion in denying witnesses?

7.       Did, in view of the totality of the circumstance, appellant receive a fair trial?

8.       Is rule § 4-215 constitutional?

Paper No. 4, Ex. 10.

On July 14, 2003, the Court of Special Appeals of Maryland dismissed the appeal for the failure to comply with Maryland Rule 8-602(a)(8). *Id.*, Ex. 12. Petitioner filed a petition for writ of habeas corpus in the Court of Appeals of Maryland on or about January 3, 2005. Paper No. 7, Ex. 2. The Court of Appeals ordered that the matter be forwarded to the Circuit Court for Washington County to be filed in the criminal case and directed that the matter be treated as a *pro se* post-conviction petition. *Id.*, Ex. 1. On May 5, 2006, a counseled supplement to the petition for post-conviction relief was filed, arguing that Petitioner's appellate rights were violated. Paper No. 4, Ex. 14. On August 16, 2006, post-conviction relief was granted, in part, and Petitioner was permitted to file a direct appeal to the Court of Special Appeals.[7] *Id.*, Ex. 15; Paper No. 7 at 1. The sole question raised on the counseled resubmitted appeal went to trial court error for the failure to comply with Maryland Rule 4-215. *Id.*, Ex. 16 & 17.

---

[7]     All other post-conviction grounds were dismissed with prejudice by consent of the parties.

5

On September 23, 2008, the Court of Special Appeals concluded that neither Judge Wright nor Judge Beachley had failed to comply with Rule 4-215 and affirmed the convictions.  Paper No. 4, Ex. 18.  According to the Petition and attachments, Petitioner submitted a petition for writ of certiorari to the Court of Appeals of Maryland, which was denied on December 12, 2008.   Paper No. 1 at 3 & Attachments.

The sole ground raised here involves Petitioner's assertion that his convictions were secured by denying him his right to counsel, in violation of his Sixth Amendment right.  Paper No. 1

## Analysis of Petitioner's Claim

### Standard of Review

Because the Petition was filed after April 24, 1996, it will be decided under amendments to the habeas corpus statutes contained in Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Brown v. Angelone*, 150 F.3d 370, 372 (4th Cir. 1998).   Under the AEDPA, federal courts conducting habeas corpus review no longer can correct mere error in state court proceedings, but must instead exercise a more limited review set forth in 28 U.S.C. § 2254(d)(1) and (2)(as amended).  Section 2254(d) now provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court characterized 28 U.S.C. § 2254(d) as a "new, highly deferential standard for evaluating state court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).  In *Williams v.*

*Taylor*, 529 U.S. 362, 407-08 (2000), Justice O'Connor, speaking for the majority, further elucidated:

> Section 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under Section 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to...clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of...clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-413. Justice O'Connor indicated that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States'...refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.

Furthermore, she indicated that:

> [u]nder Section 2254(d)(1)'s 'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 411.

In other words, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 410. A state court decision involves an "unreasonable application" of Supreme Court precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id*. at 407-08, or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have

controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000); *see also Booth v. Nuth*, 288 F.3d 571 (2002).[8]

The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002).   It explained:

> For  respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. See *Williams,* supra, at 411.   Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id*. at 698-99.

"The federal habeas statute dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt. The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington,* 444 F.3d 295, 299 (4th Cir. 2006) (internal quotation marks and citation omitted). "The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan,* 127 S.Ct. 1933, 1939 (2007).  Consequently, where the state court has adjudicated a claim on the merits, federal habeas relief is appropriate only if the state court's judgment resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an

---

[8]     A decision is contrary to the Supreme Court's clearly established precedents if the state court applied a rule that contradicts the governing law set forth in the Court's cases, or if it confronted a set of facts that is materially indistinguishable from a decision of the Court but reached a different result.  *See Brown v. Payton*, 544 U.S. 133, 141 (2005). A decision constitutes an unreasonable application of the Court's clearly established precedents if the state court applied the Court's precedents to the facts in an objectively unreasonable manner. *Id.*

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008). A decision is contrary to the Supreme Court's clearly established precedents if the state court applied a rule that contradicts the governing law set forth in the Court's cases, or if it confronted a set of facts that is materially indistinguishable from a decision of the Court but reached a different result. *See Brown v*. Payton, 544 U.S. 133, 141 (2005). In sum, § 2254(d) imposes a highly deferential standard for evaluating state-court rulings and demands that the state-court decisions be given the benefit of the doubt. *See Renico v. Lett*, --- S.Ct.---, 2010 WL 1740525 at *6 (U.S. 2010).

Further, in reviewing Petitioner's attack on his state court convictions, the court presumes that factual determinations made by the state court are correct. *See* 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence. *See Wiggins v. Smith*, 539 U.S. 510, 541 n. 1 (2003). With these standards in mind, the court shall consider Petitioner's claim.

Respondent raises a three- pronged challenge to Petitioner's claim. First, he contends that as Petitioner has raised his Sixth Amendment claim as "more directly" challenging the trial court's application of Maryland Rule 4-215, the claim is not cognizable under 28 U.S.C. § 2254(a) as it does not raise a direct attack under the constitution, laws, and treaties of the United States. Alternatively, Respondent claims that to the extent Petitioner is raising a constitutional challenge to his counsel waiver, it is procedurally defaulted because it was not raised as a constitutional claim in

the state court.[9]   Finally, Respondent argues that "even if cognizable and not defaulted. Arnold's claims still fails."

In his reply, Petitioner seemingly argues that his claim has not been procedurally defaulted because during the course of pre-trial proceedings, before the commencement of trial, and in post-conviction and appellate filings he argued that he did not waive his right to counsel.   Paper No. 8. He maintains that his sole ground before the court is that "the state secured his convictions by denying him his right to counsel in violation of the Sixth Amendment to the U.S. Constitution." Petitioner claims that Public Defender Eric Reed provided him ineffective assistance and he terminated him "in part for his failure to investigate options available to Petitioner's defense" and he could not allow deficient counsel to waive his rights.    *Id*.   He alleges that his discharge of counsel was by no means a waiver of his right to counsel.

As already indicated, Petitioner was deemed to have waived court-appointed counsel and proceeded to motions hearings and trial on his misdemeanor counts *pro se*.   In its opinion the Court of Special Appeals of Maryland first discussed the conversations between defense counsel, a state

---

[9]        Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See  O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728 (1999); 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of post-conviction proceedings.  Exhaustion is not required if at the time a federal habeas corpus petition is filed the petitioner has no available state remedy.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal);  *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

court judge, and Petitioner during the course of a September 13, 2001 hearing;  the colloquy

between the judge, counsel, and petitioner at a September 18, 2001 status hearing; the discussions

between the judge and Petitioner at the October 18, 2001 hearing; judicial comments entered on the

record at a November 15, 2001 status conference, and the colloquy between the judge and petitioner

prior to the  commencement of trial on September 19, 2002.  Paper No. 4, Ex. 18 at pps. 3-14.  The

Court of Special Appeals then  made the following factual observations and legal analysis under

state law:

> Appellant claims that the trial court erred in having failed to comply with
> Maryland Rule 4-215. That rule provides, in part:
>
> **Rule 4-215. Waiver of counsel.**
>
> (a)   **First appearance in court without counsel.** At the
> defendant's first appearance in court without counsel, or
> when the defendant appears in the District Court without
> counsel, demands a jury trial, and the record does not
> disclose prior compliance with this section by a judge, the
> court shall:
>> (1) Make certain that the defendant has received a
>> copy of the charging document containing notice as to the
>> right to counsel.
>> (2) Inform the defendant of the right to counsel and
>> of the importance of assistance of counsel.
>> (3) Advise the defendant of the nature of the charges
>> in the charging document, and the allowable penalties,
>> including mandatory penalties, if any.
>> (4) Conduct a waiver inquiry pursuant to section (b)
>> of this Rule if the defendant indicates a desire to waive
>> counsel.
>> (5) If trial is to be conducted on a subsequent date,
>> advise the defendant that if the defendant appears for trial
>> without counsel, the court could determine that the
>> defendant waived counsel and proceed to trial with the
>> defendant unrepresented by counsel. The clerk shall note
>> compliance with this section in the file or on the docket.
>
> ***

11

(d)     **Waiver by inaction - Circuit court.** If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

(e)     **Discharge of counsel - Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a) (1)-(4) of this Rule if the docket or file does not reflect prior compliance.

We begin our analysis by first noting what appellant does not claim. He does not contend that, when he first appeared without counsel, the trial court failed to comply with the five advice-and-inquiry requirements of Maryland Rule 4-215(a), that is to say, that the court informed him of the criminal charges against him, the possible penalties he faced, his constitutional right to be represented by counsel and the importance of that right. Those admonishments were to ensure that his waiver of counsel was knowingly and intelligently made. *Broadwater v. State*, 401 Md. 175, 180-181 (2007). Appellant responded by repeatedly telling the trial court that he did not want to be represented by his appointed assistant public defender and by

declining repeated offers to grant him the opportunity to discuss representation further with the Public Defender's Office.

Hence, the only issues raised by appellant and thus the only ones before us are whether the circuit court violated Rule 4-215(e) by failing, so appellant contends, to make a finding that his waiver of counsel was for non-meritorious reasons and violated Rule 4-215(d) by finding waiver by inaction. At the outset, we note, however, that reversal for non-compliance with subsections (d) and (e), as opposed to subsection (a) of Rule 4-215, requires the reviewing court to find "a clear abuse of discretion." *Felder v. State*, 106 Md. App. 642, 651 (1995). We find no such abuse here.

It is true, as appellant points out, that the court on September 18, 2001, did not expressly state that his claim of ineffective assistance of counsel was not meritorious. But, when the exchange between the court and appellant is viewed in its totality, it is difficult not to conclude that appellant clearly understood that the court had found his reasons for discharging his recently assigned counsel nonmeritorious. Moreover, there is no question but that the court then proceeded to give appellant all of the necessary advisements required by section (a) of Rule 4-215. The court, in fact, read Rule 4-215(e) to appellant, asked for and listened to his reasons for wanting to discharge counsel, and then requested and received assurances from appellant that he understood the charges and the consequences of his decision to discharge his counsel. *See Maus v. State*, 311 Md. 85, 113-114 (1987) (court must invite defendant to explain presence without counsel and determine whether the reason is meritorious); *Hawkins v. State*, 130 Md. App 679 (2000) (requiring same process where defendant wishes to discharge counsel). Thus, it is hard to imagine what prejudice appellant suffered from the court's failure to make what was implied explicit.

This Court finds unpersuasive appellant's argument that he was justified in discharging his counsel because he and his counsel had "disagreed about the proper way in which to defend this action." The argument's vagueness aside, appellant misinterprets the Court of Appeals' statement in *Treece v. State*, 313 Md. 665, 674 (1988), that "the defendant ordinarily has the ultimate decision when the issue at hand involves a choice that will inevitably have important personal consequences for him ...." The holding in that case was that "[a]bsent the most unusual circumstances," a competent defendant, rather than his counsel, may choose whether to enter a plea of not criminally responsible. *Id.* at 681. The Court thus categorized this key decision with choices to represent oneself, to plead guilty or not guilty, and to waive a jury trial. It recognized that most other decisions as to trial strategy and tactics are ultimately for counsel alone, even if the defendant disapproves. *Id.* at 671-673. Obviously, then, mere disagreement as to how to defend a case, even though it may reduce the client's level of trust of counsel, does not justify a defendant in

discharging that counsel and seeking direct judicial appointment of another, which, as discussed below, would conflict with the Public Defender Statute.

Moreover, only a month later, at a subsequent proceeding on October 18, 2001, the court made it crystal clear that it found appellant's reason for discharging his counsel was without any merit, and appellant does not dispute that. In fact, appellant expressly concedes that on October 18, 2001, the trial judge explicitly found non-meritorious his claim that the assistant public defender had rendered ineffective assistance of counsel. During that proceeding, appellant suggested to the court that the waiver inquiry on September 18, 2001, had been defective, and then, claiming that the assistant public defender had done nothing but enter his appearance, he reasserted his claim of ineffective assistance of counsel. The court responded in these words: "[T]here has not been shown any meritorious ineffectiveness of counsel since counsel was barely in the case when you discharged counsel." The court thereafter restated that finding twice, pursuant to Rule 4-215(e), while continuing to make it clear to appellant that he could still seek representation through the Public Defender's Office. In fact, four days later, the judge wrote a letter to appellant encouraging him to do just that, enclosing a copy of Rule 4-215 and warning him that, if he did not, he might be found to have waived counsel. At this point, there can be no dispute, the court had more than adequately complied with the requirements of Rule 4-215(e).

But appellant persists. He claims that, because he was allowed to discharge his assistant public defender on September 18, 2001, the ensuing proceeding, on October 18, 2001, "was too late in the day for the trial court to make a determination about whether appellant's discharge of counsel was meritorious." But it was hardly "too late in the day" as that finding was made four months before trial. Moreover, since judicial compliance with subsection (a) of Rule 4-215 can occur cumulatively, that is, over several proceedings, *Broadwater*, 401 Md. at 182, 200, there is no reason to conclude that it cannot do so with respect to subsection (d) of the same rule.

Appellant's unwillingness to discuss this matter with the Public Defender's Office, despite its overtures and the court's entreaties to do so, led the court, ultimately, to find, on the day of trial in February 2002, "waiver by conduct." Given the trial judge's persistent attempts to help appellant obtain representation, this finding, pursuant to Rule 4-215(d), was not an abuse of discretion. *McCracken v. State*, 150 Md. App 330, 356-359 (2003) (in light of judge's knowledge of the advice given appellant upon his repeated discharges of and prior appearances without counsel, no further inquiry necessary); *Felder v. State*, 106 Md. App 642, 650-651 (1995) (two judges ruled that the appellant waived counsel by his "non-diligence in aggressively pursuing the subject of his legal representation").

But, what apparently underlies appellant's complaint is the belief that the circuit court should have appointed him counsel who was not a member of the Public Defender's Office and that its refusal to do so constituted error. Nothing in Rule 4-215 requires a court to appoint such counsel for an indigent defendant. Moreover, any such appointment that did not involve the Public Defender in the process would conflict with the statutory scheme for representation of indigents. Article 27A of the Maryland Code is the Public Defender Statute, and it contains, among others, the following provisions:

### § 4. Legal representation by Public Defender

(a) It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article. Legal representation may be provided by the Public Defender, or, subject to the supervision of the Public Defender, by his deputy, by district public defenders, by assistant public defenders, or by panel attorneys as hereinafter provided for.

***

### § 6. Representation of indigents; panel attorneys

(a) Each district public defender, subject to the authority and supervision of the Public Defender, shall maintain a confidential list of private attorneys-at-law who shall be available to serve as counsel to indigent persons eligible for legal representation under this article. The attorneys on each list shall be classified into various panels pursuant to qualification criteria set forth by the Public Defender. Such criteria shall be based upon the nature and complexity of the type of offense requiring legal representation, the previous trial or appellate experience of the attorneys, and any other factors considered necessary to insure competent legal representation.

(b) Except in those cases where representation is provided by an attorney in the Office of the Public Defender, the district public defender, subject to the supervision of the Public Defender, shall appoint attorneys from the appropriate panels to represent indigent persons. The maximum use of panel attorneys shall be made insofar as practicable.

(c) The primary duty of all panel attorneys appointed by the Office of the Public Defender shall be to the individual defendant, with like effect and to the same purpose as though privately engaged by the indigent person and without regard to the use of public funds to provide the service. This shall not preclude the designation or assignment of different individuals to perform various parts of the service from time to time. A panel attorney who is assigned to represent an indigent person under this article shall report to the Office of the Public Defender on his representation of the indigent person, as prescribed by rules of the Public Defender.

* * *

(f) Nothing in this article shall be construed to deprive any court mentioned in § 4(b)(2) of this article [including circuit courts in criminal cases] of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is

represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.

The court advised appellant on September 18, 2001, that he could not choose among assistant public defenders and that the "only method" of appointing an attorney would be "through" the Public Defender's Office. A month later, on October 18, the court informed appellant, "[A]n indigent defendant is not entitled to counsel of his or her own choice," and, further, "The Office of the Public Defender is available to provide counsel." That advice was legally correct. *Fowlkes v. State*, 321 Md. 586, 605 (1988) ("Moreover, for indigent defendants unable to retain private counsel, the right to counsel is but a right to effective legal representation; it is not a right to representation by any particular attorney." (Citations omitted.)). The court went on to tell appellant that it would "contact the Office of the Public Defender to try to secure [him] representation." And that office plainly never refused to represent appellant; indeed, it made clear, on the record, that it was available to discuss further with him his need for representation.

Nor did appellant effectively invoke the court's authority to appoint counsel under Article 27A, § 6(f). He did not assert facts that even suggested that a conflict of interest existed with his discharged counsel, in particular, or with the Public Defender's Office, in general, and that office remained willing to represent him. His discharged counsel's purported lack of activity over the summer had resulted in no adverse consequences. And the federal court's refusal to grant appellant's pro se request to assume jurisdiction in the case certainly was not attributable to appellant's discharged counsel, who informed the court on September 18, 2001, that he had never seen the pleading.

In sum, the record as a whole establishes that the trial court properly complied, successively, with the requirements of Rule 4-215 (e) and (d). Over a period of more than five months following his initial "termination" of his representation by his first assistant public defender, appellant was given repeated judicial advice and ample opportunity to obtain counsel through the Public Defender's Office. His right to counsel was thus protected, and the rule's purposes were achieved.

Paper No. 4, Ex. 18 at pps. 14-23.

The undersigned has reviewed the claim on the merits.[10]  The factual findings of the Court of Special Appeals are supported by the criminal case record and shall not be overturned under 28 U.S.C. § 2254(e).  Further, the decision does not run afoul of established Supreme Court precedent.

The Sixth and Fourteenth Amendments guarantee that a person brought to trial in any state or federal court is afforded his right to assistance of counsel before he can be validly convicted and punished by imprisonment.  *See Powell v. Alabama*, 287 U.S. 45, 53 (1932).  A right to counsel generally includes the right to counsel of choice, if defendant can afford to retain counsel, and includes the right to reasonable opportunity to obtain counsel of choice.  *See United States v. Inman*, 483 F.2d 738, 739-40 (4th Cir. 1973).  This right is not absolute.  An indigent defendant has no right to be represented by a particular lawyer and can demand a different attorney only for good cause.  *See Morris v. Slappy*, 461 U.S. 1, 23 n. 5 (1983); *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988); *see also Miller v. Smith*, 115 F.3d 1136, 1143-44 (4th Cir. 1997); *United States v. Mullen*, 32 F.3d 891 (4th Cir. 1994).

Petitioner in the instant case presented nothing to the trial court, nor to this court, that illustrates good cause for discharging Eric Reed as his appointed public defender.  The record shows that Reed appeared on Petitioner's behalf at September 13 & 18, 2001 preliminary hearings and was officially terminated at the September 18, 2001 hearing at Petitioner's request.  Paper No. 4, Ex. 2 &

---

[10]  Any direct challenge to the state rule in question (Rule 4-215) does not implicate petitioner's Sixth Amendment right to counsel.  It is not a cognizable claim for federal habeas corpus relief.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67- 68 (1991).  Further, the claim, as formally raised in state court, was not specifically presented as a constitutional claim. Therefore, as raised here as a Sixth Amendment claim, it would appear to be procedurally defaulted.  Nonetheless, the court has chosen to examine on the merits the issue of whether Petitioner's Sixth Amendment right was

Ex. 3, Tr. at 1-4; Paper No. 7, Ex. 1 at p. 9. In addition, Petitioner rejected any representation by the OPD. The basis for seeking termination appears to involve Petitioner's disagreement with the failure of Reed to: prepare a defense; properly investigate claims of meritorious defenses; "submit any document, pleading, motion, memorandum, request for discovery, or any other document to the court with the exception of an entry of appearance;" discuss the case with Petitioner; and *perhaps* for Reed's comments at a September 13, 2001 hearing that he may seek a competency review for Petitioner. Paper No. 4, Ex. 2, Tr. at 4; Ex. 3, Tr. at 6-8; Ex. 4, Tr. at 18-21.

Further, although a defendant may waive his or her right to counsel, the record must show that the waiver was made in a voluntary, knowing, and intelligent manner. *See Godinez v. Moran*, 509 U.S. 389, 390 (1993); *Gallop*, 838 F.2d at 108. No particular form of interrogation or colloquy is required by the judge. A judge must allow sufficient time for defendant to make the decision, develop for record information on defendant's ability to make the waiver decision, and explain the value of counsel to accused. *See Gallop*, 838 F.2d at 110. Waiver of counsel need not be explicit but may be inferred from particular facts and circumstances. The question of whether defendant invoked his right to self-representation is one of fact entitled to presumption of correctness. *See Fields v. Murray*, 49 F.3d 1024, 1032 (4th Cir. 1995).

The record here shows that circuit court judges bent over backwards to ensure that Petitioner's waiver was voluntary and intelligent. The state court fully inquired into Petitioner's intentions regarding legal representation by engaging in repeated colloquys and discussions at various proceedings. He was repeatedly asked if he wanted representation by the OPD; indeed the matter was again referred back to the OPD by the circuit court after the well-documented

termination request, all for naught, as Petitioner again refused OPD services.   Paper No. 4, Ex. 5, Tr. at pps. 1-3.

Advised that he could not "cherry pick" counsel outside of court-appointed  OPD counsel, Petitioner continued to reject the offer of OPD representation and appeared *pro se* at various status and motions hearings, where he proffered a plethora of motions,  and then at trial, where he filed proposed voir dire.  The trial court noted that there was waiver of counsel "by conduct" because Petitioner had made no application to the OPD and was last advised of his right to counsel on November 15, 2001, some three months before trial.   *Id.*, Ex. 8, Tr. at 3-4.

The Court finds that Petitioner's right to counsel was not violated.  He discharged counsel at a preliminary stage of his case, less than three months after the case was transferred to the circuit court and five months before trial.  Petitioner never gave counsel the chance to represent him and his assertions of ineffective assistance are unsupported.  He was repeatedly advised of his right to counsel and by his words and actions knowingly waived that right.  His knowing  waiver does not provide him a Sixth Amendment foundation to attack his convictions.

## Conclusion

The court finds no basis to grant Petitioner habeas relief in light of its examination of pre-trial hearing and trial transcripts and state court rulings.  His Petition shall be denied and dismissed.

When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336

(2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Petitioner does not satisfy this standard, and the court declines to issue a certificate of appealability.[11] A separate order shall be entered reflecting the foregoing Memorandum Opinion.

Date:  <u>June 3, 2010</u>              _____/s/_____
                                  DEBORAH K. CHASANOW
                                  United States District Judge

---

[11]     *See* Rule 11(a) of the Rules Governing Proceedings under Section 2254 or Section 2255 (as amended December 1, 2009) (district court must issue or deny certificate of appealability when it enters a final order adverse to the applicant).